USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/2/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICKY E. HALL, JR.,

                           Plaintiff,

   -against-

WESTCHESTER COUNTY, et al.,

                           Defendants.

18-cv-8114 (NSR)
AMENDED
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

       Plaintiff Ricky E. Hall, Jr., ("Plaintiff") commenced this *pro se* action on or about September 5, 2018, against Westchester County, Aramark Correctional Services LLC, Francis Delgrosso (Assistant Warden, Westchester County Jail), Darnell Flax (Food Services Manager, Westchester County Jail), Manuel Mendoza (Aramark Food Services Director, Westchester County Jail), Donna Blackman (Aramark Food Services Director, Westchester County Jail), Leandro Diaz (Deputy Commissioner, Westchester County Jail), Middleton (Assistant Warden, Westchester County Jail), and K. Hewitt (Law Librarian, Westchester County Jail) (together, "Defendants"). On July 31, 2020, Defendants filed a motion to dismiss the Complaint. For the following reasons, the motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

       The following facts are taken from Plaintiff's Complaint, dated September 5, 2018 (ECF No. 2.)

       Between approximately June 8, 2018 and September 5, 2018, Plaintiff was incarcerated as a pretrial detainee at the Westchester County Department of Correction ("WCDOC"). (*Id*. at

2, 4.) During that time, Plaintiff alleges several issues with his food including: (1) meat that was always undercooked and "blood and always pink inside," (2) cold serving trays, (3) serving trays with leftover food from previous meals, (4) serving trays with peeling plastic that gets into the food, (5) serving trays with black mold, (6) overcooked rice and noodles, (7) soggy and brown salads, (8) bread that is always stale and moldy, and (9) juice containers with mold around them. (*Id*. at 4.) Plaintiff further alleges that on six separate occasions he found dead flies in his meals and on three separate occasions he found foreign objects in his food. (*Id*.) Plaintiff indicates that on one occasion he found a metal clip in his food that appeared to be from a food bag. He also indicates that he found human spit with phlegm in his food on two separate occasions after he complained about old food. (*Id*.)

Plaintiff alleges that on August 20, 2018, he attempted to file a grievance regarding the food quality issues with Sergeant Conkling. (*Id*.) Sergeant Conkling refused to accept Plaintiff's grievance, stating "you guys keep grievance the food and nothing going to change and we have a new policy [WCDOC] does not accepting food related grievance's any more." (*Id*.)

Plaintiff alleges that Defendants are supervisors responsible for preparing inmate food and for supervision of inmate workers and contractors. (*Id*.) He alleges that they had knowledge that the meals were prepared and served as described by Plaintiff. (*Id*.) He further alleges that inmates working in food service are improperly supervised and do not wear gloves or hairnets. (*Id*.) Plaintiff alleges that Defendants were aware of the food issues through other lawsuits and complaints. (*Id*.) Plaintiff alleges that Defendants had meetings amongst themselves where grievances and lawsuits related to the food quality issues were discussed. (*Id*.)

Plaintiff alleges that, as a result of the food quality issues, he suffered from nausea, diarrhea, weight loss, fatigue, headaches, stretch marks, stomach cramps, vomiting, hunger pains, and dehydration. (*Id*. at 6.)

Plaintiff further alleges that Defendants Hewitt, Delgrasso, Diaz, and Middleton created a policy that states that 42 U.S.C. § 1983 forms are contraband at WCDOC and as such, Defendant's family had to mail him the forms so he could file his lawsuit. (*Id*.)

Plaintiff seeks $750,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, and nominal damages against all Defendants. (*Id*.)

## MOTION TO DIMISS STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Although for the purpose of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). It is not necessary for the complaint to assert "detailed factual allegations," but must allege "more than labels and conclusions." *Twombly*, 550 U.S at 555. The facts in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*.

"Pro se complaints are held to less stringent standards than those drafted by lawyers, even following Twombly and Iqbal." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL

3357171, at *2 (S.D.N.Y. July 3, 2013). The court should read pro se complaints "'to raise the strongest arguments that they suggest,'" *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally"). "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). Dismissal is justified, therefore, where "the complaint lacks an allegation regarding an element necessary to obtain relief," and therefore, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

The Court interprets the Complaint to allege two claims pursuant to 42 U.S.C. § 1983—one condition of confinement claim in violation of the Fourteenth Amendment and one denial of access to the courts claims in violation of the First Amendment.

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal

statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); see *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. See *Annis v. Westchester County*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (noting that Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution") (citation omitted).

**I.**     ***Monell* Liability**

Municipalities and officers in their official capacities may only be held liable under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy. In addition, local governments, like every other § 1983 'person,' may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the government's official decision-making channels." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 659 (1978).

Courts in this Circuit apply a two-prong test for § 1983 claims brought against a municipality. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir.1985) (citation omitted). First, the plaintiff must "prove the existence of a municipal policy or custom in order to show

that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.* (citation omitted). Second, the plaintiff must establish a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Hayes v. Cnty. of Sullivan*, 853 F.Supp.2d 400, 439 (S.D.N.Y.2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

To satisfy the first requirement, a plaintiff must prove the existence of: (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y.1996) (internal citations and quotation marks omitted); see also *Brandon v. City of New York*, 705 F.Supp.2d 261, 276–77 (S.D.N.Y.2010) (quoting *Moray* and updating citations to cases).

Although a plaintiff is not required to identify an express rule or regulation to establish a *Monell* claim, proof of "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir.1998) (quoting *Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) (internal quotation marks omitted). "In the end, therefore, a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." *Hayes*, 853 F.Supp.2d at 439 (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir.2008) (internal quotation marks omitted).

Defendants argue that Plaintiff's claims against Westchester County, Aramark, and the individual defendants in their official capacities should be dismissed for failure to show a municipal policy or custom as required under *Monell*. (ECF No. 39 at 8-12.) Plaintiff argues that he adequately pled a policy by asserting (1) Sergeant Conkling informed him the WCDOC had adopted a policy of refusing to accept food-related grievances, (2) Westchester County and Aramark regularly met with individual supervisors and discussed grievances and lawsuits that revealed the food quality issues, (3) detailed facts regarding the food quality issues, and (4) the existence of numerous lawsuits regarding the same food issues. (ECF No. 40 at 9-10.)

The Court agrees with Plaintiff. While Defendants are correct that an incarcerated individual does not have a Constitutional right to a grievance procedure, *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003), WCDOC's alleged decision to refuse to accept food-related complaints *because* "you guys keep grievance the food and nothing going to change" is evidence that the food quality issues were a custom and that there was constructive notice. Further, if true, the allegation that Westchester County and Aramark had meetings with supervisors to discuss the complaints and lawsuits pertaining to the food issues is additional evidence that the food quality issues were a custom that the Defendants were aware of. Plaintiff's detailed description of the pervasive food issues also supports the proposition that the issues were widespread. Amongst other things, Plaintiff alleges that during his time at Westchester County Jail, his meat was *always* undercooked and bloody and his bread was *always* stale and moldy. The allegations are detailed and apply to nearly all of the food Plaintiff received during the time he was incarcerated at Westchester County Jail. *See Ford v. Aramark*, 2020 U.S. Dist. LEXIS 13174, *34, 2020 WL 377882 (S.D.N.Y. Jan. 23, 2020) (denying motion to dismiss where "Plaintiff has plausibly alleged a persistent and widespread practice regarding the freezing

temperatures in his holding cell"); *Pagan v. Westchester County*, 2014 WL 982876 at *27 (S.D.N.Y. March 12, 2014) (concluding that plaintiff sufficiently alleged custom or policy and/or failure to properly train and supervise where "plaintiffs [ ] alleged that inadequately trained workers preparing food at the Jail [had] frequently served undercooked food, rotten food, or inadequate portions"); *see also Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 417 (S.D.N.Y. 2008) (declining to dismiss pro se plaintiff's Monell claims at motion to dismiss stage because, in part, "Plaintiff has not yet had an opportunity to take the discovery that will be needed to flesh out any Monell claim," but noting that "[i]f Plaintiff's case turns out to be unique, the Monell claim will not survive summary judgment or a directed verdict").[1]

## II. Personal Involvement

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because [he or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); see also *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (affirming a district court's dismissal of claims against a prison warden where plaintiff did not allege the warden's personal involvement in, or awareness of, the health, safety, and communications issues raised by plaintiff); *Walker v. Schriro*, No. 11-CV-9299 (JPO), 2013 WL 1234930, at *15 (S.D.N.Y. Mar. 26, 2013) ("A defendant's status as warden or commissioner of a prison, standing alone, is [ ] insufficient to support a finding of supervisory liability."). Rather, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in

---

[1] The Court agrees with Defendants that the existence of other lawsuits in and of itself is insufficient to confer *Monell* liability. See *Rivera v. Westchester Cnty.*, 2019 U.S. Dist. LEXIS 143085, *17, 2019 WL 3958425 (S.D.N.Y. Aug. 22, 2019) (collecting cases). Furthermore, Plaintiff's blanket assertion that Defendants failed to adequately train and supervise food preparers without specific facts as to the training deficiencies is also in and of itself insufficient to confer *Monell* liability. *Id*. at *16-17 (collecting cases). Nevertheless, the Court finds that *pro se* Plaintiff has sufficiently pled other facts that to establish a custom under *Monell*.

8

order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (emphasis added) (internal quotation marks omitted). As the Second Circuit has explained, the personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Defendants argue that Plaintiff failed to plead personal involvement of the individual defendants. (ECF No. 39 at 17-18.) Plaintiff asserts that the individual defendants "either had direct knowledge of the condition of the food or had a duty to learn about" it and "failed to act to address the constitutional violations of the prison." (ECF No. 40 at 12.) Construing the Complaint liberally, the Court agrees with Plaintiff. The Complaint alleges that the individual defendants are supervisors who are responsible for preparing food and supervising inmate food preparation. The Complaint alleges regular, widespread issues with the quality of the food. If this is true, the individual defendants were either aware of the custom and allowed it to continue or were grossly negligent in supervising subordinates who committed the wrongful acts. The Complaint also alleges that the individual defendants participated in meetings amongst the Defendants to discuss complaints and lawsuits pertaining to the food issues. Despite these alleged meetings and oversight of the food preparation process, the individual defendants failed to cure the issue. Therefore, the Court finds that *pro se* Plaintiff has adequately pled personal involvement.

### III. Conditions of Confinement

The Constitution requires that prison officials "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment," whereas an inmate's claims arise under "the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). In either case, to set forth a § 1983 claim for conditions of confinement, a plaintiff must show that an individual "acted with deliberate indifference to the challenged conditions." *Sanders v. City of New York*, 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018).

The deliberate indifference test is a two-pronged test. First, a plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at 30. "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id*. at 29 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). Second, a plaintiff must plausibly allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Strange v. Westchester Cnty. Dep't of Corr.*, 2018 WL 3910829, at *2 (S.D.N.Y. Aug. 14, 2018) (internal quotations omitted). This standard is "defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts . . . have subjected the detainee to a substantial risk of harm." *Darnell*, 849 F.3d at 30.

The Second Circuit has determined that the Constitution "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983).

Construing the Complaint liberally, the Court finds that Plaintiff has adequately pled sufficiently serious conditions. Plaintiff indicates regularly being served undercooked and bloody meat, moldy bread, and juice containers with mold around them, all of which are obvious health hazards. Plaintiff additionally asserts finding foreign objects, including a metal clip and flies, as well as phlegm in his food on several occasions. Finally, Plaintiff asserts that food was prepared in unsanitary conditions and that old food was served. *See Crispin v. Westchester County*, 2019 WL 2419661, at *3 (S.D.N.Y. June 10, 2019) (conditions sufficiently serious where Plaintiff alleged receiving raw and bloody meat on at least twenty occasions and receiving chili and beans that made him sick and require medical treatment); *Hanner v. Westchester County*, 2019 WL 1299462, at *7 (S.D.N.Y. Mar. 21, 2019) (conditions sufficiently serious where Plaintiff alleged food did not conform to medically-prescribed diet, thereby aggravating incontinences, food contained foreign objects, and food was served in unsanitary conditions). Plaintiff adequately pled injuries as a result of the food issues, including nausea, diarrhea, weight loss, fatigue, headaches, stretch marks, stomach cramps, vomiting, hunger pains, and dehydration. Therefore, Plaintiff has satisfied the first prong of the deliberate indifference test.

The Court finds that Plaintiff has also adequately pled the second prong. As discussed in the *Monell* and the personal involvement analyses above, Defendants are alleged to have created a policy of disallowing food-related grievances because inmates were constantly filing them and Defendants had determined that they were not going to make any changes. Further, Defendants

11

are alleged to have met to discuss the complaints and lawsuits related to the food issues. Finally, the individual defendants are alleged to have supervised the food preparation process. Through these allegations, Plaintiff has plausibly pled that Defendants were aware of or should have been aware of the alleged conditions and either intentionally or "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee." *Strange*, 2018 WL 3910829, at *2 (internal quotations omitted).

Therefore, the Court finds that Plaintiff has sufficiently pled his conditions of confinement claim.

### IV. Denial of Access to Courts

Plaintiff does not oppose Defendants' motion to dismiss this claim because Plaintiff "was able to file the necessary forms to proceed with this claim." (ECF No. 40 at 13.) As such, the claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part, and Plaintiff's § 1983 denial of access to courts claim is DISMISSED. The Court waives the Initial Pre-trial conference and directs the parties to complete a Case Management Plan and Scheduling Order (blank form attached hereto). Said Scheduling Order shall be submitted to Chambers on or before March 15, 2021. After review and approval of the Scheduling Order, the Court will issue an Order of Reference to Magistrate Judge Andrew E. Krause. The parties are directed to contact Judge Krause within seven (7) business days of the date of the Order of Reference to schedule a conference.

The Clerk of the Court is directed to terminate the motion at ECF No. 38.

Dated:   March 2, 2021                                    SO ORDERED:

   White Plains, New York

_____

NELSON S. ROMÁN

United States District Judge

UNITED STATES DISTRICT COURT  Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

                                                    Plaintiff(s),      **CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER**

- against -

                                                    Defendant(s).     _____ CV _____ (NSR)

-------------------------------------------------------------x

    This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders,

        non-party depositions shall follow party depositions.

8.     Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.     Requests to Admit, if any, shall be served no later than _____.

10.    Expert reports shall be served no later than _____.

11.    Rebuttal expert reports shall be served no later than _____.

12.    Expert depositions shall be completed by _____.

13.    Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.    **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York

      _____

                                                  _____

                                                  Nelson S. Román, U.S. District Judge